a NASCAR Olympian and former firefighter was buried here in his house. No matter how close you are, it's Grayson Hodges. Stand please Oyez, Oyez, Oyez, all persons having business before the Honorable, the United States Court of Appeals for the District of Columbia Circuit are admonished to draw near and give their attention for the court is now sitting. God save the United States and his Honorable Court. Be seated please. Case number 16-3021, United States of America v. Jamal A. Adams, also known as Ishmael Heru Bay Appellant. Ms. Petras for the appellant, Mr. Dieterman for the appellee. Before we get started, I just want to make some introductory remarks. We're grateful for President Burwell's invitation to hold a sitting of our court in your beautiful house. Can you hear? I feel like I'm getting an echo. Let's move this. It's feeding back, I'm afraid. Yeah. Any better? Yeah. Sit further away. To this beautiful new building, this gives us a chance to continue a great and often forgotten historical tradition of circuit riding. Traveling outside of our home courthouse to hear cases and enhance public understanding of the role of the federal courts. The Judiciary Act of 1789 created three circuit courts for the entire country. Until judges were appointed to them, that duty fell to the justices of the United States Supreme Court. And from the beginning, the justices complained about it. In a 1790 letter to President Washington on behalf of the court, the first Chief Justice, John Jay, objected that circuit riding was unconstitutional. In a 1792 petition to the Congress, he and the other justices complained that it was too burdensome. And in 1795, John Jay resigned as Chief Justice of the United States to become the Governor of New York, in part because he could not abide circuit riding. Indeed, when President Adams asked him to return to the bench in 1800, Jay declined, citing the, quote, fatigues incident to the office, which for him had chiefly been the burdens of circuit riding. Now, to be fair to the justices in those days, the roads were rough and physical injuries were a frequent occurrence. Chief Justice Marshall fractured his collarbone en route from D.C. to Richmond, where he had been circuit riding, after his stagecoach flipped over on an icy road. That delayed his return to the start of the Supreme Court's term by four days. And he was not alone. Justice Samuel Chase fell into an icy pond and nearly drowned while crossing the frozen Susquehanna River by horse en route to a circuit sitting. Despite the perils of circuit riding, Congress insisted on it, first out of necessity and then later out of the Democratic-Republican Party's desire to punish and hobble the Federalist judiciary. Congress's command was not limited to the Supreme Court. Our court initially had a circuit riding mandate as well. Three months after the District of Columbia became the nation's capital, Congress passed the Judiciary Act of 1801. That act created our court and required it to meet four times every year in each of the two counties that then comprised the District of Columbia. Washington County on one side of the Potomac and Alexandria County on the other. Although the travels of our judges were geographically more limited than those of the justices, we complained too. Indeed, the first Chief Justice, Judge of our Court, Thomas Johnson, refused to serve, even though he was confirmed by the Senate. Johnson had previously served on the Supreme Court, resigning in 1793 after just 163 days on the bench. In his resignation letter to President Washington, he said, he could not, quote, resolve to spend the next six months of the year of the few I have left on roads and at taverns chiefly, often in situations where the most moderate desires are disappointed. Johnson vowed never to serve in public office again, and in 1801 he kept his promise, declining to take his seat on our court. Nonetheless, the name Thomas Johnson appears prominently on a marble wall in our courthouse with the designation, 1801 to 1801, Chief Judge. The statutory circuit writing requirement ended more than 170 years ago, and I can assure you today, we are here voluntarily. No one has forced us to come to AU. So why are we here? Well, it is true that traveling around the district is no longer quite so burdensome or perilous as it once was, although I'll tell you, both the traffic and the red line are not that easy to navigate. But that's not why we left the comforts of our own courthouse. No, the reason that we take up again is best summed up by a quotation from William Patterson, a signer of the Constitution of the United States, a United States Senator, and a Supreme Court Justice. On June 23, 1789, Patterson wrote that judges should ride circuits so that they may, quote, carry the law to the people's homes and the court to their doors. In short, circuit writing brings the work of our court out from the corners of the courthouse and into the community that we serve. It's an opportunity for a wider public, especially for law students, to see how the judiciary works. So let us begin. As you may have noticed, there are two of us on the bench this morning. Our third judge is in the ether, Judge Randolph. He's ill, but he will be participating by telephone. Judge Randolph, can you hear? All right. So Judge Randolph is here. Deputy Thurman. Now you can call the first case. Deputy Thurman. For some reason we're getting out of this. Your words are being repeated about a minute and a half later. Somebody has the capacity of... I'm here. We got you. Thank you. Would you like me to call the case? We're here. We got you. OK. Yeah, we're having a five minute, five second delay or ten second delay. OK, I do see our redoubtable I.T. team talking this over. So I'm happy to go ahead and call the case or wait a moment. We'll get started. But if somebody can fix it. OK, sure. Case number 16-3021. The United States of America versus Jamal A. Adams. Also known as Ishmael Herubey Appellant. Ms. Petras for the appellant. Mr. Dieterman for the appellee. May it please the court. Mary Petras on behalf of Ishmael Herubey. I would like to reserve three minutes of my time for rebuttal. We have raised four issues in our briefs. Unless the court has questions with regard to the third and fourth issues, I would like to use my time to discuss the first and second issues. In Batson versus Kentucky, the Supreme Court designed a three step procedure for determining whether or not discrimination has infected the jury selection process. When properly applied to the facts of this case, the Batson test demonstrates that the government engaged in purposeful discrimination. Violating not only Mr. Herubey's rights, but the rights of the African-American jurors who were denied the right to serve on the jury. This is a structural error that requires reversal. Although 48% of the population of the District of Columbia is black, and 44% of the qualified jurors in this case were black, Mr. Herubey was tried by a jury that included just two black jurors, or 16.7%. The government used 100% of its strikes, peremptory strikes, to exclude black jurors. And as the district court filed, and the government now concedes, this made out a prima facie case satisfying the first step of the Batson procedure. The district court then required, as the next step requires, the government to offer race neutral basis for each of its strikes, which the government did. There's no dispute that what the government stated its basis for each of these strikes were race neutral basis. However, the error here occurred when the district court failed to properly apply the third step, and failed to determine whether or not, based on all the circumstances that bear on the issue of racial animosity, that the government engaged in purposeful discrimination. It's not enough for the district court to, as it did, say that the basis that is stated by the government is, in fact, race neutral. The court has to go one step further and decide whether or not it's plausible that this, in fact, is the reason that the government struck the particular juror. A critical question is the persuasiveness of the government's explanation. In a review of the government's stated reasons, both individually and cumulatively, in this case, it demonstrates that the reasons were pretexts, and, in fact, that there was no basis for the stated reason to support it as believable that the government was striking these jurors for these reasons that they stated, rather than based on race. This is true of six of the seven strikes by the government. Although, if the government strikes just one juror based on race, then it's structural error and reversal is required. The district courts erred in applying the third step in two ways. One, it focused almost exclusively on whether or not there were white jurors who were similarly situated. Alito, when you say it's structural error, by that you mean prejudice doesn't have to be shown? Is that what you mean? Yes. But to the extent that an objection isn't made, for example, to a comparison, we've held that to be governed by a plain-error standard. In the Gooch case, the court did use the plain-error standard. But that case was very different than this case. First of all, the government was raising By which I don't mean plain-error in the sense of the prejudice, but plain-error in the sense of being able to determine whether or not it's purposeful discrimination. That is correct. But the Gooch case was very different than this case. All of the strikes at issue here were objected to before the district court. So the standard, the appropriate standard here is the clear-error standard. I thought part of the problem in Gooch was that although there were objections, the comparison to another juror who wasn't struck wasn't made. And I think we have some of those here. Is that wrong? It's different, though, because in that case, the comparisons that the appellant was asking the court to make on the appellate level in Gooch was that were complicated issues that would have involved demeanor determinations and evaluations of whether one juror wavered as to a death penalty issue compared to another and how those things balanced out. The issue here is much simpler. It's like this Snyder case before the Supreme Court where the comparisons that we're using are clearly in the record. They're based on issues that were clearly explored by both parties. And in each case here, the district court did, in fact, consider whether or not there were comparable jurors. So Gooch is not applicable here. The standard here should be clear-error on each of the issues. One of the things that the government says should be governed by plain air gets beyond even comparisons. For example, with regard to juror number 0286, who was the juror that the government stated they struck because he worked in the mental health field, below, the government said that that was their reason. And in response, the defense attorney said that we don't see any background for that. And now the government is suggesting that our argument to further expound upon that there's no evidence for that, that in fact this person did not work in the mental health field per se, but really was a dietician that worked at St. Elizabeth's and worked in nutrition services, and there was no evidence that he actually dealt with patients. The government's asking the court even to use plain air standard on that. But it's not a requirement that we go be, that we can't say anything else in the record with regard to an objection that is made when the objection is clearly presented to the district court, as it was here. And the district court clearly used comparison to other jurors. And we're not asking this court to go beyond and consider questions that would involve demeanor determinations. You had to pick three of the strikes that were your strongest. Could you tell us which ones they are? Yes. I'd ask the court to look at 0857, which is the juror who the government claimed that they were striking her, because her child's father- I'd ask you to pause just a minute. I don't think I have a pencil or pen on the bench. If I do, I don't see it. I can fix that. Okay, thank you. Give me that number again, please. I'm sorry to interrupt. 0857. 0857. 0743. 0286 are the two that I would think were the strongest, but I also say that 0909 was also a strong one. I also believe that the other two were strong as well. But if the court wants me to rank them, I would rank them in that order. But before we go on to the individual characteristics of each of these strikes, I'd like to make two points. There are two overall points within the record that demonstrate that the government's stated reasons in all these circumstances were pretext. One is the fact that the government asked no follow-up questions with regard to any of its stated reasons. And this evidence is that they had no real concern for these issues. I think this is a very important point, because as a trial lawyer, when you're picking a jury, you have a very limited amount of information and then a very limited opportunity to get more information. And you make these judgments quickly and in the moment. So if this- You're saying you have to make a decision in a hurry, you've got limited time, so why would you necessarily need to follow up? Because- Why is it an evil thing to not follow up? It's not an evil thing not to follow up, but it does- it evidences the fact that they didn't in fact have these concerns. Because as a trial lawyer, if you have a concern that a juror, for example, isn't understanding the questions, rather than letting it go, you would explore it to determine whether or not you want- Of the hundred or so jury trials that I've tried, I think there were a great many jurors that I excused on preempt without following up questions. Well, I think there- Preemption was not a factor. I just had enough information to know that I'd rather not have that juror without any follow-up. I think that it's nonetheless one factor that the courts have used to consider, because really you only have a limited number of preemptory strikes. But if you could get that person stricken for cause because you have some legitimate concern that they're going to be too preoccupied with their job- If you had a cause examination conducted, this was preempt while it's limited. It's not negligible. And it just simply canceled. It's just not very convincing to say, well, they didn't follow up. Therefore, it's an animus behind the strike. I'm not sure your logic holds up on that. I think it is one factor that several courts have used. I think the Supreme Court has used it as a factor because it demonstrates that they don't actually have a concern. I'm not saying it's the be-all and the end-all, and if you don't follow up, you can't use it. But if you're standing there and someone is evidencing some confusion over questions, rather than just writing it off as someone that you're going to use a preemptory strike for, you'd want to get some more information if you genuinely have that concern about their confusion. So I think that- This is Judge Randolph. Suppose that the prosecutor believes that juror number one looked at him cross-eyed. And for that reason, he's going to exercise a preemptory strike. What's his follow-up? I'm not saying that they have to follow up. And certainly in that circumstance, if you- Because strategically, that may backfire. I mean, if you follow up and antagonize the juror, and it turns out that maybe your concerns were not as severe as they otherwise appeared to be, and what are you supposed to do then? I think the court is correct. I'm not saying that you have to follow up. All I'm saying is where you- And if your concern is that the person looked at you cross-eyed, there'd be nothing to follow up on. So I would agree, but that's- You're not impressing us too well with the no follow-up argument. Then I'll move on. Well, you do have on your side a Supreme Court opinion. I do. Miller L. v. Redke. Yes. Thank you for- Please consider that as a factor. It may not be a dispositive factor, but in that case- Thank you for remembering the case name that I could not remember. I believe there are other circuit court cases the same that use it as a factor. Another overall factor that I think evidences pretext in this case is the fact that the government, although they said that they had concerns about law enforcement biases, and they in fact struck one black juror for having some experience with the IRS, they did not strike any of the white jurors, and there were several, I think eight, who said that they had negative experiences with the IRS. Which juror number is that one? The juror number that they struck based- that was a black juror that they struck is 0041. We're not challenging that strike because they did say that that person had said that they were audited, and it was based on the preparer's mistake. But if you looked at the jurors that also said that- the white jurors who said that they had experiences with the IRS, they're no less certainly than jurors 0041. And those jurors would be jurors number 1487, who said he had to hire an accountant in response to IRS letters on several occasions. Juror number 1097 had a similar experience with the IRS. These are all white jurors that the government did not strike. But if they in fact- but you would think that these strikes would be, given the fact that they struck a black juror for this basis, that these would be more obvious strikes for them. And it evidences that the other jurors, where they're coming up with these reasons, is just pretext. But you didn't challenge the strike of 0041. No, I'm using it as an example of why their reasons for striking the other jurors appear to be pretext. Because if in fact they- if in fact what their- it seems more likely that their concerns would be connections to IRS in a criminal tax prosecution. That's why they struck black juror 0041. Why aren't you challenging 0041? Because it seems like a plausible race-neutral basis for striking 0041, besides the fact that he was black. Your argument sounds like an argument for why you should strike- why you should object. That they didn't strike other people who were in a similar situation. Defense lawyer did not object to that strike below. Not only did the defense counsel didn't object below, you're not objecting here. Correct. And it would have been- that one would have been under the plain air standard. But I do think that that- the fact that they didn't strike any of the white jurors that did have a connection to the IRS, or had a negative experience with the IRS in a criminal tax prosecution, evidences the fact that where they're striking people for reasons like he seemed confused, when in fact the record doesn't bear that out, evidences that those other strikes were pretext. And I could go through the individual strikes. I see that I only have a minute and 40 seconds left, and I did want to touch upon the instruction issue. But I would- just to point out a couple of things before I move on to the strikes that we think are most important. Again, strike number for juror number 0857. The government indicated that they struck this juror because her father- the father of her child was incarcerated, and that she may use those biases. It says if- that if the defendant was incarcerated, that that could have an impact on the mother of his children, and that maybe she wouldn't get child support, and they were concerned that somehow this woman would be concerned about that. The evidence that that is pretext is that that argument would apply to every parent, and yet the government didn't try to figure out who was a parent or who wasn't a parent, and whether or not that would apply. And there's no factual basis for it in the record. This juror did not say that she wasn't getting child support because her child's father was incarcerated. Perhaps she was. She didn't say that she needed it. She didn't say that he would be supporting her if he wasn't incarcerated. But there was no- nothing in the record to suggest that this would be a valid basis for wanting to strike someone. And again, I know the court's not terribly frustrated by this, but if you thought you might have some concerns about that, you might want to ask her about whether or not she was getting child support or how that played into it. And the government also did not cite this as a reason for striking juror 0041, which is a black juror that they did strike because of the audits, but that person's child father was also convicted, and that person said that she believed that her child's father was treated unfairly, unlike juror number 0857, who specifically said she thought her child's father was treated fairly. They did strike 41. But curiously, when asked why they struck 41, they noted the issue with the IRS, but they didn't also note that this issue with regard to worrying that somebody who's parent who was- They only gave one reason. You don't need two base neutral reasons. You only need one. You don't need two reasons, but if you had several reasons, and if you were legitimately concerned, it would suggest that you would say that this is also another juror who I have concerns that maybe they'll be too sympathetic to the child issue. But there was also nothing in the record to suggest that it was going to come out that the client had children. Do you want a chance to say something about your other issue? Yes, thank you. First of all, the issue raised is not whether or not the unanimity instruction should have been given during the final instructions, but whether or not the instructions should have been given in response to the jury note. The defense- The juror's questions did not address the kind of unanimity that you're asking for in the instructions. That is correct. It did not specifically address- It did not specifically ask a question that would raise it, but it raised the issue in the sense of if we're going to answer this question- How does it raise the issue when it's not directed to the unanimity of means? Because the issue was whether he was charged with one count of violating, corruptly endeavoring to obstruct or impede the intent of revenue service. And within the indictment, there were three types of acts that could have been how he did that. And the jury sent back a question with regard to those three different types, and whether or not they had- What was the question? The question was- Did they have to find him guilty or find that he committed all the acts? No. The question just quotes us. If we find the defendant guilty of A, but not guilty of B, and not guilty of C, must we find the defendant not guilty of count one? That's the question, right? That is the question. No. And they don't specifically ask, do we all- The instruction that you're saying should have been given does not address that question. Instruction is whether they have to be unanimous as to the means of commission of the offense. Correct. Or was it sufficient that they all believe they committed the offense, even though they may differ as to the means? Correct. But when you're- That instruction is not an answer to the question they ask, is it? No, but it's necessary in order to clarify. And even if it's not necessary in a direct response, if the unanimity instruction is proper and should be given, there's no reason not to give it at that point to ensure that the jury is clear. Specifically when they raised- Your trial counsel did not request that instruction at the time of the jury instruction. Not at the time of the jury instruction. But once, seeing what the jury question was and that there was some concern over whether or not they had to find all three, then what the jury – what the government – what the court then responded to that note actually suggests that it would be a basis for needing to clarify. Because the court then said, the government must prove beyond a reasonable doubt, this is what the court said to the jury in response to the note, the government must prove beyond a reasonable doubt all three elements of count one. But the government need not prove all three are – all three of the means listed. So they don't have to prove all of them. But it would be appropriate- That's what was given. It does. But because unanimity as to which of those acts is necessary in order to convict him, the court abused his discretion in not giving what he was going to give. I don't have an example of the court doing that. No, but let's say, for example, one of the elements of the offense was not instructed. And a jury note came out that didn't precisely ask for that, but reminded everyone that, oh, we did not instruct this. So it's – the court should still- It's impossible just to get too hypothetical sometimes. Has there ever been a case where it happened the way you're about to tell me? I cannot give the court a citation to where it happened. But the jury needs to understand clearly – The whole idea is to make sure the jury understands clearly what they need to find. So if the jury is asking questions with regard to the A, B, and C, the different types of acts that could be the violation- But it's not unanimous that such a unanimity instruction is proven first place, are they? I'm sorry. Say that again, please. The theory that you have to instruct a jury – that you should instruct a jury that they have to be unanimous as to the means of conviction. That's not a unanimous holding of the circuit, is it? This circuit, though, has held that you have to be unanimous as to which acts constitute the violation. And our point is here, it's not just a matter of means. It's a matter of the jury – the government charged three separate types of acts that are separated by time. It's a matter of submitting the offense. Correct. Now, we have never held in a holding that's still out there.  Withdrawn. We have never handed that decision, so it's not circuit law. That part of the decision is not circuit law. So we have no holding that says that you have – you ever have to give an instruction on the question of unanimity as to means, have we? The court in Mangere strongly approved of a rule requiring that the need for unanimity instruction on particular acts- And we have avoided deciding this question because in every case it's been raised as a plain error question, and in every case we've said it's not plain error. That's correct, right? That is correct, Your Honor. But is your argument – I'm just a little uncertain about your argument. Is your argument that the error – I'm not worried about the standard of review of the error yet – that the error is – that this answer that you want is required by the question the jury asked? Or is your argument that the instruction you want is required by the Constitution due process? I believe that the instruction was required by the Constitution due process. And the question of what standard to use is – it goes to at what point it was asked. Because we agree it was not asked for the initial instructions, but it should have been asked and it should have been given. And there's also a possibility that under Mangere the court should have given it sua sponte because that's what the court suggested there. But we don't have plain error here and the court doesn't need to reach that because the defense counsel did ask for it, perhaps belatedly. Suppose the jury has not submitted the question. Should the defense attorney have come in to the court and said, Your Honor, we move that you recall the jury and give them this instruction after the period of deliberation has gone as far as it has? I think that would be a different issue. Would he have been entitled to the instruction if that's it? I think the court doesn't have to answer that question. I think, yes, he should be entitled to it because the whole idea is to get the jury the proper instructions before they make a decision. So a rule that would say that once – that you can't think of it later and if the jury has not decided, give it to them, would be saying that if you don't say it right now before the jury retires, we don't – and you – even though there's an opportunity to correct it. Anywhere where it's been held to be plain error or even error for a judge not to recall a jury after a period of deliberation and give an additional instruction. I haven't seen – I'm not talking about Allen charges, but an additional – I haven't seen a case with that factual scenario either, so I haven't seen where they say it's not error or it is error. The one case that the government – there are no cases that are what the government says that you have to rule on plain error based on the fact that it was only asked in response to a note. The only case the government cites is the Hernandez case from the First Circuit, which is not the same as here, because that issue, the issue that was raised was whether or not the court erred in responding to a note before the defense lawyer could make it back to the courtroom. And the question there was their objection or potential objection. It wasn't clear from the opinion that they were actually even objecting to it, but the potential objection to an instruction that was already given, not one that was left out. So what I think the court should rule is the idea is to get the jury the proper instructions before they decide, and to hold that because we are belated in asking for it, we're not going to tell the jury what they constitutionally have to find doesn't seem to support the Constitution. Thank you. Thank you. May it please the court. Mark Detterman for the United States. This is a criminal tax case. It is about a D.C. metropolitan police officer who, despite being sworn to uphold the law, refused to follow the law, and although being paid by taxpayers, refused to pay his own taxes for nearly a decade. Sounds a lot more like a jury speech than a defendant argument. During jury selection, the government exercised seven preemptory challenges to ask to excuse prospective jurors. Defendant exercised nine such challenges. The Supreme Court has said such challenges can be properly based on subtle impressions and intangible factors. At the end of jury selection, defendant made a Batson objection, challenging six of the government's strikes, because all seven of the government's strikes were against African-American prospective jurors. And the government understands that that is a difficult fact. There were three. The government understands that creates a prima facie case of discrimination, right? Yes, Your Honor. We concede that's a prima facie. Yes. There were three African-Americans remaining on the jury panel. One of those was excused because of child care problems. So in the end, there was only two African-Americans on the panel. As you said, the district court found that the strikes constituted a prima facie Batson claim. Nevertheless, I think it would be helpful if you focus on the three that the defense council listed as the most difficult cases for you. Yes, Your Honor. 857, 743, and 286. Okay. 857 is a juror who stated that her child was currently in. Yes, Your Honor. So the prosecutor challenged 857 because the father of her children was incarcerated, which can be a very emotional issue. The prosecutor, she stated this as a reason for the strike. Your Honor, this is an individual who stated that the father of her children is currently incarcerated. Depending on which witnesses are called during this trial, it might come out the defendant has children, and that if he is incarcerated, that could have an impact on the mother of his children, who, for example, would not be getting child support. The concern would be that she might bring in some biases from that family situation into the case here. The defense's argument, among others, is that there was no evidence that juror 857 was getting child support. That's true, Your Honor. The prosecutor just said, for example, child support could be an issue. The prosecutor didn't say that was an issue. Again, there are several cases that upheld striking a juror because the father of the children has been incarcerated. There are also cases that upheld as race neutral, cases where a co-parent or a spouse are incarcerated. Did the government move to strike everybody who was married on the jury? No, Your Honor, of course not. How did the government know that they wouldn't also have children and that the spouse might have child support? Well, it's not about child support. It's about having a co-parent that's incarcerated is the thing that's the emotional issue. Did the government strike everybody who had a co-parent who... And at the hearing, that was their argument. And the judge found that it was significantly more impactful to have the father of one's children incarcerated than to know that some cousins are incarcerated. And the judge actually wrote about a page in his order on this issue and discussing his reasons for upholding that strike. He did, Your Honor, call that strike the closest strike of all the government strikes. And 743? Yes, Your Honor, 743 was struck based on English proficiency. The prosecutor, she said, Your Honor, this is an individual who seems to have some problems with the English language. I think he even explained to Your Honor his lack of understanding of the questions. He used the word mastery and was having trouble communicating to you his lack of understanding regarding the questions. For that reason, we are concerned about his ability to follow the evidence. The court agreed with this reasoning and found the prosecutor's reasoning credible. He said, the court said, this is someone who is not good with English. Now, defense argued that if he was not good with English, he should have been struck for cause. But the district court said there could be, basically, if you look at the colloquy, the district court is saying there could be people that would not be struck for cause because of their lack of English proficiency, but would still have trouble following the evidence. And that's our argument here, is that courts have found that English proficiency is a race-neutral reason for striking a juror. And courts have also found that the complexity of the case can bear whether English proficiency is a race-neutral reason for striking someone, and this was a criminal tax case that had some complex issues of real estate transactions in it. But about the fact that the juror was a mechanical engineer, I'd suggest he needed English proficiency for his job. Yes, Your Honor, a mechanical engineer will have great proficiency in mechanical engineering, but he still may have issues with English. And again, this is a juror that specifically said that he didn't understand two questions. One of those questions was question 14 that the judge asked him, was whether he would be able to not be biased against the defendant because the defendant was a police officer. This prospective juror said he didn't understand that question and asked it to be explained to him. The second question he said he didn't understand was question 15, which simply asked whether it would be a hardship for him to serve. The judge went through those questions with him and he answered them correctly, but initially he showed confusion and the judge did find that he had difficulties with English. 286. Yes, Your Honor. The prosecutor stated the reason for challenging Juror 286 was that he was a mental health worker who may be sympathetic toward criminal defendants. She said, Your Honor, this individual stated that he works in the mental health field, including with individuals who have criminal records. It is our position that individuals in the mental health field tend to be more sympathetic to defendants in criminal cases. He was a nutritionist. He said that he was a nutritionist, although they didn't... He was a nutritionist in an inpatient facility. Let me say what he said. He said, I take care of patients' diets needs. Some are mentally insane and some are just convicted of crimes, but I take care of their basics. So that suggested that he works daily with people that are in an institutional setting, many of whom are convicted of crimes. The district court... Well, the defendant argued only that that wasn't a valid reason in this case because the defendant was also a police officer, which means that he would not necessarily have a bias in favor of a police officer. It might be a bias against a police officer defendant. But the court found that the government's reasoning is applicable to any criminal defendant, that someone working with criminals in an institutional setting may be sympathetic toward criminals, and that was a race-neutral reason. The court also found that it was not pretextual because there weren't any other jurors that were in the mental health field who were not struck. If I could go back briefly to Juror 41, that was the juror that the government struck because of tax issues. The tax issues for that juror were identical to the defense in this case, to the defense on some of the means in this case. In other words, this case charged as one of the manners of obstruction that defendant filed false returns at overstated expenses. The defendant's defense on that issue was that his tax preparer had prepared those and that he wasn't aware of the false deductions. Juror 41 said that a tax preparer had caused her problems and that she owed a lot of money because of the tax preparer. So this was a very similar issue to the case in this case. And that's why... No, Your Honor. No, Your Honor. It isn't before us. I just wanted to... The defense counsel brought that juror up specifically, but they did not challenge that juror. They did not raise the challenge. Yeah, they did not raise the challenge. At the time, during the hearing, after we stated our reason, defense counsel said, I agree with that, and we moved on. I just want to make clear that the district court took this issue very seriously. This is an experienced district court judge. He spent a decade on D.C. Superior Court, and he carefully reviewed all the government's challenges. Do you think we give more deference to judges who have been there for a longer time than ones who have been for a shorter time, or more deference to district judges who've tried a lot of cases? Is there any law on that side? It's not necessarily counterintuitive, but it's certainly counter to the way we... I think where Batson issues may come up frequently in D.C. Superior Court, that may mean that he has more experience dealing with that issue. Any appellate case that altered its level of deference based on its... No, Your Honor. No, Your Honor. But what I wanted to add is that during the hearing, twice the judge said that he was certainly going to hold the government to its burden on each strike. And he also said that the strikes that were all against African-American raised the court's antenna. And finally, he said he was loathe to uphold peremptory strikes where all were against African-Americans. And thus, he was taking this hearing very seriously, and he went through every single juror, and he reviewed their demeanor and the prosecutor's demeanor, and he concluded that the government's reasons were not pretextual and that the prosecutors had not challenged jurors simply based on their race. Let me ask you... I probably should have asked the defense counsel about the ineffective assistance of counsel claim. Yes, Your Honor. Well, we have a strong set of case law, starting with Rashad. It indicates that in most cases, when it's raised for the first time on direct appeal, a different lawyer that we allow to send it back and remand it for fact-finding in the district court. Does not meet that relaxed standard for remand? Your Honor, I don't think so. In this case, what they're complaining about is that the defense attorney agreed to a tax loss range of $40,000 to $100,000. And also with respect to restitution, which you didn't discuss in your brief. Okay. I understand your argument about tax loss, but what about restitution? Well, the restitution issue was whether or not the district court made adequate findings that the 2011 and 2014 tax returns were willfully false. Our position is if you read the colloquy, the sentencing colloquy in total, that he clearly made that finding. The judge started out saying that these crimes were done willfully and knowingly. And then he went through each of the individual endeavors that were part of the charges. I think their argument is that he could have shown better evidence of actual loss. Just leave aside the question of how that might affect his offense liability, but with respect to the amount of restitution. Oh, actual tax loss, you mean? To reduce the tax loss? Right. Okay. Also, perhaps payments, repayments that he made. Okay. Well, the fact is the government was prepared to show that the total tax loss was $136,000 at the sentencing hearing, and we agreed to a range of $40,000 to $100,000. The restitution was set at $45,000. Defense counsel agreed to a range that was instead of the range that we wanted, 21 to 27 months, was 15 to 21 months. Is there a difference between tax loss for purposes of the offense level and restitution? I don't see that they've made an argument that the tax loss, that there were some additional expenses that would reduce the restitution amount in this case. Is there an argument that the accountant should have gone out and found this information? That they should have got an accountant who would have gone out and found this? Yes. Well, they did have an expert testify. The expert testified, but the judge largely rejected some of the expert's testimony. There's really no evidence that there were additional expenses. Moreover, most of his income, $570,000, was salary from the MPD, and so it would be very difficult to get under the $45,000 restitution amount or the $40,000 tax loss bottom of the guidelines with that much income from the salary alone, which was essentially undisputed. We also showed that he received a check for $237,000 for a real estate transaction. That was profit in addition to that. So there's really no, you know, defense counsel hasn't presented any evidence that there were additional expenses that weren't counted. If anything, that his expert over-counted expenses during the hearing, and that's what the district judge found. How could he present evidence when the issue is both how he comes up on appeal? Present evidence of? Well, he could have presented evidence at sentencing. I mean, that's our argument is that he failed to be effective by not presenting additional losses during the sentencing hearing. That's the defense argument. Yes, yes. I thought you were talking about the new attorney raising this ineffective argument for the first time on appeal. Yes, that's true, Your Honor, yes. And the argument is that the defense attorney did not raise additional, should have raised additional expenses during the sentencing hearing, and that was ineffective not to raise additional expenses. Again, the district court had basically rejected many of the expenses that their expert testified to as being not supported, and also the defense counsel agreed to a sentencing range that was much below what the government was arguing the loss amount was. He agreed to a range that was $40,000 to $100,000, and we don't think that was ineffective to make that agreement, which reduced his range from 21 to 27 months down to 15 to 21 months. And he eventually received a downward departure and received only an 11-month sentence. One of the things, and Judge Garland mentioned this, is that we are unique among the circuits of allowing ineffective assistance to be raised on direct appeal. And one of the oddities about it is that in a situation in which the defendant has the burden of proving ineffective assistance of counsel, and yet when we get a case like this one and it's not clear, we just can't tell from the record that's presented to us that if it were an habeas, the defendant would lose because he hasn't carried his burden. In our court, that entitles them to an evidentiary hearing. Do you think our precedent would allow us in a situation like this to say, look, the defendant hasn't carried his burden, and we deny the ineffective assistance claim without prejudice to the defendant bringing an habeas corpus or collateral attack? Your Honor, I'm sure you know your court's precedent better than mine. I think that is a good idea. Again, I would say that the defense counsel's agreement, a $40,000 to $100,000 tax loss, was a strategic agreement that was not ineffective. It was a very smart agreement because the judge was inclined to not believe they're an expert about the extra expenses and losses he supposedly had from this property at that point. Are there further questions for today? Is there time left? All right, we'll give you another two minutes anyway, just because we're at AU. Thank you. I'm glad to be here. First of all, the government – I need you to save some time for the two issues you didn't address, the restitution and the ineffective assistance. I'll do that. The government, first of all, reads too much into the record and asks the court to take too much from a record that doesn't support its factual contentions in the basis for the spats and strikes. With regard to strike number – of juror number 0743, the strike that the government claimed this individual seemed to have some problems with the English language, and the government is now saying they didn't understand question 14 and 15, the record does not support that. And it doesn't even support that he misused the English language. The juror said – the juror didn't have any answers on its card, which was the appropriate thing to do – or, no, the juror said – I'm sorry. The juror answered question number 16 because he did not – and this is a quote from the juror – I did not master it at 14 and 15. And the court said you didn't master them or answer them. And he – the juror said, yes, I did not master question 14 and 15. And the court said, what do you mean? I did not thoroughly – I did not understand thoroughly what you were saying. Well, you didn't master something. You didn't understand it thoroughly. He's actually using the word correctly. It may be an odd choice of words, but it wasn't incorrect. And this is the man who's an engineer, and yet the government is saying we struck him because he doesn't understand English. And then he – The judge did say, quote, that he was not good with English. Except that it appears the judge was repeating what the race-neutral basis was, rather than making a finding that he was not good with English. And, first of all, the judge did then just repeat question 14, and the juror clearly understood it without any question and answered it, and then question number 15 the same. And what the court's referring to now in the district court statement with regard to making a finding that he had trouble with English, he didn't quite say that. He said – he did say, this is an individual who seems to – that was the government. The court said – the court said, this is someone who's not good with English. He's repeating what the prosecutor says is a strike. He said, again, this is not a cause strike. This is a peremptory strike. This is someone who is not good with English, even if that doesn't mean they wouldn't be able to understand it. And then he specifically – they said they're allowed to strike that person for a race-neutral reason. So he's basically saying, yes, what he says is a race-neutral reason. The court never agreed that he couldn't understand English. And, in fact, the court specifically found, I would have stricken him for cause if I thought he couldn't understand it. So that undermines a finding that there's factual support. Let me – since you've now used my two minutes. I'm sorry. Let me ask you about the remaining two issues. One, you entitled the district court procedurally erred in determining restitution. Does – and that is not the ineffective assistance claim. How does that interrelate with the agreement on the loss range from 40,000 up? There are two separate issues. The agreement – you agree on the loss range to determine the guidelines, but they left open the restitution issue, and they could be two separate numbers. And how would they be two separate numbers? Was an argument made that they were two separate numbers? There was an argument, and there were, in fact, two separate numbers, because the court still had to make a finding as to what the appropriate restitution number was. But when you agree specifically we're going to agree that the loss range is this particular range, the court still has to make a finding with regard to restitution. And our point on the third issue in our brief was that because there was no unanimity instruction given, there's no clear finding that the jury convicted him based on the W-4 issues for the 2011 and 2014 tax returns. So the court had to make a specific finding by a preponderance of the evidence that – The loss was between 40,000 and 170,000. Correct. Indicates that the judge didn't have to work very hard on making a finding that the loss was – that the restitution was 45,000. Was there a specific argument made that the loss is different from the restitution amount, that the tax loss is not the same as the restitution? I believe that they did make the specific argument. They are? The basis for the argument had to do with whether or not the tax years for – there's two separate issues. One is whether or not the loss to the IRS for the tax years 2011 and 2014, based on the tax preparer putting in these employment discounts, whether or not that should have been included within the restitution, because the court had to find that he corruptly intended to obstruct the IRS, as opposed to negligently filed those returns. And the district court's statement with regard to that – Let's say the amount was 40,000. How do you get an agreement on a $40,000 amount? I have an agreement on it, and had that not be good enough for that amount of restitution? Well, the loss amount doesn't always necessarily have to equal restitution because if the loss amount is – the loss amount sometimes can be everything that we stole, but maybe I don't owe that much, or the loss amount could be – In what theory would he not owe that much? If the government loses 40,000, I would think the first cut would be, and you owe 40,000. What's the argument for why you don't owe 40,000? It's not an argument of why you owe, but an argument of why it should have been restitution. He may have owed it because his taxes weren't done correctly, but it would not be a proper restitution if he did not corruptly file the tax returns, or with a corrupt intent as opposed to negligently filing it. Why is corrupt intent a question for restitution? Because it had to be – in order to owe somebody restitution, you have to make a finding that there was a criminal violation to the loss, not that I owe some civil debt because I negligently filed something else. But the $40,000 is used for the offense level for which the guy goes to jail. I assume that's relevant to the criminal offense, right? It is. This is not some civil case unless – I appreciate the tax division is here, but this is actually a criminal case. So it wasn't like a civil finding or anything. Correct. But on the issue of restitution, the court had to make a specific finding with regard to which payments as to which tax years were corrupt violations of the law. So are you suggesting the possibility that there was some shortage that was a result of corrupt action and an additional shortage that might have been a shortage for civil debt, but that was not the result of the corrupt action? Am I following you? Correct. And that's what our third issue is based on. Well, why would the civil debt him going to jail? When he agrees to a $40,000 loss, that affects his offense level for how much time he spends in jail. It's not as – so the $40,000 has to be as a consequence of a criminal act, right? Correct. But part of what we're saying is that the defense attorney was ineffective in agreeing to that. I got that. That's Roman numeral four. I'm on Roman numeral three. Yes. I understand that. But in determining – our only issue was that he did not specifically agree that the tax year loss for 2011-2014 should be included within the restitution, and therefore the court had to make the finding by preponderance of the evidence and the court didn't do that. Very briefly, what should counsel have done which made him ineffective? Counsel should have presented the additional losses related to the property. Which would have off-balanced the amount he owed, is that correct? Correct. Because it wouldn't have been a debt. Can I take one? And I know that I've used all my time and more. Just on the issue of whether or not, and I know I'm going back to the bad point, but I'd ask the court to look at page 34 of our brief, which does have the citations to the cases that do rely on whether or not the government asked follow-up questions to determine whether or not their reason that they're giving is a pretext or something that they were actually concerned about. That's the one I cited for you, Miller L. It is, and there are others there, too. Okay. The Supreme Court beats all the others. That's true. Thank you, Your Honor. All right. We'll take the matter under submission and we'll ask the deputy to call the next case.
judges: Garland, Sentelle, Randolph